## Catharine Diller, Appellant, *v.* Mary Nelson.

*Rescission of fraudulent contract—Failure to meet notes.*

The mere fact that notes, given in payment for goods, were not met at maturity, even if the purchaser never intended to pay them is not sufficient to sustain a rescission of a contract for fraud.

*Evidence of insolvency—Fraudulent contract.*

The court is justified in refusing to permit the jury to pass upon the question of the vendee's insolvency in April upon evidence that he had confessed a judgment at a date three months later, without any evidence as to the extent of his possessions at either time.

Argued Nov. 17, 1898. Appeal, No. 87, Nov. T., 1898, by plaintiff, from judgment of C. P. Lancaster Co., Sept. T., 1897, No. 43, on verdict for defendant. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J. SMITH, J., dissents.

Feigned issue. Before BRUBAKER, J.

It appears from the record and the evidence that Catharine Diller, the plaintiff in this issue, sold certain chattels to William T. Nelson and accepted notes in payment therefor. The notes were not met at maturity. Nelson confessed judgment to his wife who issued execution and sold his personal property. The plaintiff claimed title to the goods prior to the sale on the ground of fraud in procuring the sales thereof.

Other facts appear in the opinion of the court.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* among others was in giving binding instructions in favor of defendant.

*W. R. Wilson,* for appellant.—A sale may be rescinded and the property retaken by replevin when the vendee was insolvent at the time of the purchase, knew himself to be insolvent and intended to cheat and defraud the plaintiff out of his goods, and where the circumstances surrounding the transaction are such as tend to show trick, artifice and false representation: Davis v. Cosel, 4 Pa. Superior Ct. 519; Claster Bros. v. Katz, 6 Pa. Superior Ct. 487.

Fraud may be inferred by the jury from circumstances, else it could never be proven: Glessner v. Patterson, 164 Pa. 224.

*Geo. Nauman*, with him *Brown & Hensel*, for appellee.— We believe that the safe and sound rule is to hold that, as long as we follow Smith v. Smith, 21 Pa. 367, in order to rescind a contract of sale, it must be shown that it was made upon the representation of some supposed existing fact, asserted by the purchaser to be true and known by him to be untrue.

Fraud must be proved, not presumed, and there is no proof of fraud in this case.

OPINION BY W. D. PORTER, J., July 28, 1899 :

The defendant had caused a levy to be made upon certain tools and machinery in the possession of William T. Nelson, the plaintiff claimed to own the property and a feigned issue was duly awarded.    The plaintiff had sold the property to William T. Nelson, on April 3, 1897, and for the amount of the purchase money had accepted two notes of Nelson dated that day, one for $200, payable in ninety days, and the other for $267.86, payable in 120 days, and the property was delivered to Nelson and remained in his possession until July 10, 1897, when the levy was made.    The plaintiff alleged, and to maintain the issue it was necessary for her to show, that she had been induced to sell the property by false and fraudulent representations made by W. T. Nelson at the time of the sale, and that, upon the discovery of the fraud, she had rescinded the contract and reclaimed the goods.    The evidence establishes that at the time of the sale, when the purchaser asked the agent of plaintiff to accept his notes, he, Nelson, said : " My paper, you ought to know what it is.    My paper is as good as cash, equal to gold. It will go in any bank.    You will have no trouble to collect it. Any bank will discount it.    My paper is No. 1." It was further testified that he said the reason why he asked for time was, that he had bought out his partner, Small, and had paid him some thousand dollars spot cash, that he had taken a contract which would amount to between $9,000 and $10,000 and would have to pay cash down for a good deal of material, that he had funds in the two banks, which he did not wish to use for making this purchase, that his credit was good and that he did not owe a dollar in the world.

The representation that any bank would discount the notes was a mere assertion of the belief of the buyer as to what the banks would do.   There was no evidence which would have justified a jury in finding that the purchaser had any reason to believe that the bank would decline to discount his notes.   He was carrying on a foundry and machine shop, a sawmill and a planing mill.   There was no suggestion that any bank had ever declined to discount his paper.   These notes were offered at the bank for discount and the bank declined to discount them, for what reason is not stated.   Even if this was ground for rescission of the contract it was the duty of the plaintiff to take such action with reasonable promptness; instead of doing so she, through her agent, decided to wait until the paper became due. After this delay she could not rescind upon the mere ground that the bank had refused to discount the paper.   As to the specific representations that he had paid cash for the interest of his partner, that he had taken a large contract, and that he had money in each of two banks there was no evidence that said statements were not true.

This limits the inquiry as to the fraudulent character of the transaction on part of the purchaser to the general assertion of solvency to be gathered from the whole conversation and the specific representation that he "did not owe a dollar in the world."   The latter embraces the former; for a man who owes nothing cannot be said to be insolvent.   That these representations were made was established beyond question, but it was necessary for the plaintiff to go further and establish that the representations were false and the purchaser knew or ought to have known that they were false.   The plaintiff undertook to produce evidence to establish these facts.   The learned court below was of opinion that the evidence was insufficient to warrant the submission of the question to the jury, and gave binding instructions in favor of the defendant.   This action of the court constitutes the basis of the only assignment of error which it is necessary to consider.

It was incumbent upon the plaintiff to show that Nelson procured the property through some artifice or misrepresentation intended and fitted to deceive.   The mere fact that the notes given in payment for the goods were not met at maturity, even if the purchaser never intended to pay them, is not sufficient:

Smith v. Smith, 21 Pa. 367; Labe v. Bremer, 167 Pa. 15; Wessels v. Weiss Brothers, 156 Pa. 591. The only evidence which plaintiff offered, in support of her assertion that the representations were false and were fraudulently made, consisted of the record of the judgment under the execution upon which this levy was made. This record showed a judgment confessed, on July 8, 1897, for $15,000, upon a note with warrant of attorney dated July 7, 1897, a sale by the sheriff, under the execution of certain personal property which netted after payment of costs the sum of $1,390.30. There was, also, evidence that one piece of land which Nelson owned was worth $4,000. The note upon which this judgment was entered bears date after the first note of Nelson held by Mrs. Diller became due. There was no evidence whatever as to what personal property Nelson was possessed of in addition to that sold by the sheriff, nor as to the extent of his holdings of real estate, nor as to the amounts of his outstanding book accounts at his various manufacturing establishments. The evidence produced was not sufficient, standing alone, to indicate the extent of Nelson's assets at the date of the entry of the judgment, much less to establish the condition of his affairs at the time he made the representations in question: Ralph v. FonDersmith, 3 Pa. Superior Ct. 618. This case is clearly distinguishable from the Cincinnati Cooperage Company v. Gaul, 170 Pa. 545, in which the buyer made representations of solvency and within three months made an assignment for the benefit of creditors, the value of his assets and the amount of his liabilities were ascertained in a judicial proceeding to be: assets, $4,000, and liabilities, $52,000. That was such a condition of hopeless insolvency as to indicate that it must have existed for a considerable period, unless otherwise explained, and it was held that it threw upon the purchaser the burden of making the explanation. In the present case the court was asked to permit the jury to pass upon the question of Nelson's insolvency in April upon evidence that he had confessed a judgment at a date three months later, without any evidence as to the extent of his possessions at either time. There was no evidence which could have sustained a verdict that Nelson was either indebted or insolvent at the time he purchased the property in controversy. If evidence had been produced tending to show that his liabilities exceeded, to a con-

siderable amount, his assets at the date of the entry of the judgment, he would have been called upon to explain the apparent shrinkage, which had occurred after he made the purchase in question; but such evidence was wanting. All the assignments of error are overruled.

Judgment affirmed.

SMITH, J., dissents.