## Flick v. Decker Chevrolet Company.

*E. J. Thompson,* for plaintiff.

*J. K. Johnston* (with him *Philip H. Johnston*), for defendant.

FLEMING, P. J., July 24, 1929.—This is an action in replevin whereby the plaintiff seeks to recover from the defendant a Pontiac sedan. At the trial of the cause a non-suit was entered and the matter is now before the court on plaintiff's motion to take off such non-suit.

The contention of the plaintiff, concisely stated, is that defendant warranted a certain Hudson brougham and that by reason of a breach of such warranty he is entitled to return the same and maintain a replevin for the recovery of the Pontiac sedan which had been given in part-payment for the Hudson. His contentions are based upon his interpretation of the Sales Act

of May 19, 1915, and upon the decision of the Superior Court in Yonker *v.* Vaneer, 91 Pa. Superior Ct. 157. These remedies, however, do not inure, if controlling, to the plaintiff in a cumulative sense, for they are directly opposed to one another. In the case of Yonker *v.* Vaneer, 91 Pa. Superior Ct. 157, cited by the plaintiff, it has been held that a contract induced by fraud is voidable, and in the case of the sale and delivery of goods induced by fraud of the vendor, the vendee may rescind and sue in replevin in disaffirmance of the contract. Under the provisions of the Sales Act, the breach of warranty is the controlling feature and not fraud. Fraud is distinguishable from breach of warranty in that in fraud there is a guilty knowledge of the falsity of the representation on the part of the party making it, while in a breach of warranty there is not this guilty knowledge. The term fraud implies deceit or artifice.

There is no indication or averment, either in the pleadings or in the testimony adduced by the plaintiff at the trial, showing any trace of fraud, either express or implied, on the part of the defendant herein. In fact, we have heard no such contention from the lips of plaintiff's counsel. That fraud did not exist and has not been shown to exist is beyond question. The rule laid down in Yonker *v.* Vaneer, *supra,* therefore, cannot apply in the instant case.

There remains, therefore, for determination the following questions: Was there a warranty by the defendant to the plaintiff at the sale of the Hudson car? If so, what were the terms of the warranty? Was there a breach of such warranty, if one existed? Did plaintiff fully perform the duties and fulfill the obligations imposed upon him by law? Does the testimony of plaintiff at the trial establish a case sufficient to put defendant to a defense?

It has been held in Holmes *v.* Tyson, 147 Pa. 305, that the question as to whether or not a warranty exists, though the same be alleged to have been made by parol, is for the court as a matter of law where there is no conflict of evidence and the language alleged to have been used is not equivocal.

Plaintiff states, on page 2 of the notes of testimony, that he knew that the Hudson was not a new car. He says that defendant "said he would guarantee the car for ninety days." On page 11 of the notes of testimony, the plaintiff testified, on cross-examination, as follows: "Q. I understand you to say it would cover everything (referring to the alleged guarantee); as a matter of fact, when a guarantee is given, does it not simply refer to material and workmanship on the car? A. It does." Further, on page 17 of the notes of testimony, the plaintiff, after hesitating and refusing to answer until directed by his counsel to do so, testified, on cross-examination, as follows: "Q. I want you to answer the question; were not those defects (referring to the deficiencies in the Hudson car complained of by plaintiff) all caused by the usage of the car, rather than on account of the material or workmanship in the car? (Witness hesitates.) Q. What is your answer? A. Well, it might be. I don't know." Again, on page 20 of the notes of testimony, plaintiff testified further on cross-examination: "Q. Would lack of care, or would improper care, cause all the difficulty you had with the Hudson car? A. Well, that might have a little something to do with it, but not all to do with it." Assuming, therefore, for the purposes of our consideration, that the alleged guarantee was made, we have it from plaintiff's own lips that such guarantee covered only materials and workmanship; that it was not defective material or poor workmanship which caused the trouble he complained of; and, further, that such trouble as he had experienced was due to his, the plaintiff's, usage of the car. We have also the plaintiff's frank admission that in the period beginning Oct. 7, 1927, and ending sometime prior to Christmas in December, 1927, he

had driven the Hudson car 5600 miles, and had, during that time, collided with a deer with sufficient force to tear away the running board of the car, in which condition it remained when delivered to defendant's garage.

Plaintiff's witness, Joe Flick, who is plaintiff's brother and also a mechanic in the employment of the defendant, testified that the faulty timing complained of by the plaintiff was easily remedied and had been so remedied by shortening the chain, after which the fault no longer·existed. He added that some of the valves appeared to be burned, explaining that such burning likely came from fast driving. On direct examination, he admitted that, notwithstanding the fact that he had worked on the car, he was unable to say that there was any trouble with the transmission nor that it leaked or was cracked in any way. He admitted that when the car was returned by the plaintiff that the front fender was bent and that the bumper was broken. Taken all in all, the testimony of the plaintiff and his witnesses shows concisely that the car was given unreasonably hard usage and that it was far from being in the condition in which it was received by the plaintiff when it was returned to the garage of the defendant. If a warranty was given as to material and workmanship, the testimony of the plaintiff and his witnesses fails utterly to show any breach thereof, and there is no question of fact to be submitted to a jury.

Plaintiff cites section 69, paragraph 1, clause *(d)*, of the Act of May 19, 1915, P. L. 543, cited as the Sales Act, to sustain his right to a replevin in this case. Such clause provides as follows: "Where there is a breach of warranty by the seller, the buyer may, at his election . . . *(d)* Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid."

This does not provide that the buyer shall recover in exact kind that which he has paid or given for the article purchased. The car sought to be replevied was the equivalent of $600 in money, and money is the price which the act contemplates. "The authorities agree that upon a breach of warranty two remedies are open to the buyer: First, he may return the chattel, if delivered, within a reasonable time after discovering such breach and recover back in *assumpsit* on the common counts the amount paid; or, secondly, he may retain the chattel and sue upon the contract for damages resulting from the breach of the warranty:" International Motor Co. *v.* Oldfield, 134 Md. 207, 106 Atl. Repr. 611.

In the case of the sale of an automobile, two courses are open to the buyer when he discovers defects in the car and decides to rely on an express warranty. He may return the car and plead rescission of the contract as a defense to an action for its price and counter-claim for the amount already paid, or he may keep the car and counter-claim for damages. But these defenses are inconsistent with each other and cannot both be sustained in the same action: Miller *v.* Zander, 147 N. Y. Supp. 479.

The plaintiff has not placed or offered to place the defendant *in statu quo,* nor has any fraud been shown by plaintiff. The testimony of the plaintiff shows beyond doubt that, even though the defendant made an affirmation of fact or gave any promise relating to the Hudson car, such affirmation or promise did not extend beyond material and workmanship. The plaintiff has unequivocally admitted such in his testimony. Nor has it been shown that any defects in material or workmanship existed other than such as arose from the exceedingly hard usage to which the car was put; as evidenced by the great mileage admitted, the collisions encountered and the condition of the car upon its return.

The time has not yet arrived when it should be made possible for a man to produce a well-worn car, with a running-board and fender missing, and receive therefor an ample allowance in the purchase of another car, only to take out the car purchased and subject it to evident hard usage until its efficiency is impaired or injured and then be permitted to return it in its impaired condition and by such act relieve himself of his promises to pay and receive as an additional reward for his default the original car traded in or its liberal value which had been allowed in the trade.

We are of the opinion that there were no questions of fact to be submitted to the jury and that plaintiff has failed to establish his right to replevin herein.

And now, July 24, 1929, the motion of the plaintiff to take off the non-suit entered is dismissed.

From S. D. Gettig, Bellefonte, Pa.